## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EXTRACTION OIL & GAS, INC., *et al.*,[1] | ) Case No. 20-11548 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| EXTRACTION OIL & GAS, INC., | ) |
| | ) |
| Plaintiff, | ) Adversary Proceeding |
| | ) |
| v. | ) |
| | ) Adv. Proc. No. 20-_____ (CSS) |
| GRAND MESA PIPELINE, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Extraction Oil & Gas, Inc. ("Extraction") files this Complaint for Declaratory Judgment

against Grand Mesa Pipeline, LLC ("Grand Mesa").  As the basis for its complaint, Extraction

states the following:

### Nature of the Action

1.    On June 14, 2020, the above-captioned debtors and debtors in possession

(collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of title 11

of the United States Code (the "Bankruptcy Code").  The Debtors are operating their businesses

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624).  The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

and managing their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On June 15, 2020, the Debtors filed the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Executory Contracts Effective as of the Dates Specified Herein and (II) Granting Related Relief* [Docket No. 14] (the "Motion to Reject").  On August 4, 2020, Grand Mesa filed its Objection to the Motion to Reject [Docket No. 363].

3.      In connection with the Debtors' chapter 11 cases, this adversary proceeding seeks a declaration that certain covenants contained in the agreements between Grand Mesa and certain of the Debtors do not "run with the land."

### Jurisdiction and Venue

4.      The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334, and 2201.  The proceeding arises from the above-captioned chapter 11 cases and seeks a declaratory judgment that certain covenants (if any) contained in the agreements between Grand Mesa and certain of the Debtors do not run with the land.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      Extraction consents to the entry of a final order or judgment by this Court.

### Parties

7.      Debtors are debtors-in-possession in the above-captioned bankruptcy proceedings by virtue of filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, on June 14, 2020.

2

8.      Defendant Grand Mesa, upon information and belief, is a Delaware limited liability company with its principal place of business at 6121 South Yale Avenue, Suite 805, Tulsa, Oklahoma 74136.

<u>**Factual Allegations**</u>

A.      **The Amended and Restated Transportation Services Agreement.**

9.      On June 21, 2016, Grand Mesa entered into the Amended and Restated Transportation Services Agreement (the "Transportation Agreement") with Bayswater Exploration & Production, LLC.  A true and correct copy of the Transportation Agreement is attached as <u>**Exhibit A**</u>.

10.      Extraction Oil & Gas, LLC is the successor-in-interest to Bayswater Exploration & Production, LLC under the Transportation Agreement.  Extraction Oil & Gas, Inc. is the successor-in-interest to Extraction Oil & Gas, LLC.

11.      The initial term of the Transportation Agreement commenced as of the Commencement Date[2] and the contract ███████████████████████████ ████████████████████████████████████████████ ███████████████ unless terminated earlier under the contract's terms.  *See* Ex. A § 6.1.

12.      Under the Transportation Agreement, Extraction agreed to ██████████ ████████████████████████████████████████████ ███████████████████████ *Id.* § 4.1. The "Committed Volume" is a set amount of crude petroleum within given timeframes.  *Id.* § 2.  Grand Mesa agreed to transport tendered crude oil up to a certain volume from Lucerne, Weld County, Colorado to

---

[2] ████████████████████████████████████████████
████████████████████████████ Ex. A § 2.

Cushing, Oklahoma via its 20-inch interstate pipeline. *Id.* §§ 2 ("Services"), 3.1, Ex. A. Extraction retained exclusive control and possession of all crude petroleum until its delivery into the Pipeline System. *Id.* § 8.5. Extraction retains title to the crude petroleum throughout Grand Mesa's transportation and redelivery of its crude. *Id.*

13.     Extraction's commitments under the Transportation Agreement can be satisfied in full either by: (1) shipping certain amounts of crude petroleum within certain timeframes *or* (2) ███████████████████████████████████████████ *Id.* § 4.1. The Total Financial Commitment ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ *Id.* § 2. At Extraction's option, it may accelerate the satisfaction of the Total Financial Commitment, and its obligations under the Transportation Agreement, through payment. *Id.* § 8.2 (████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████).

14.     In accordance with their agreement to transport Extraction's produced oil, the parties agreed to dedicate and commit certain mineral interests to the performance of the Transportation Agreement—*id.* § 1.1—stating:



15.    This dedication and commitment is so broad that Extraction would now be a stranger on its own land if the parties intended the dedication to function as a conveyance. *See id.* The Subject Leases are ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ *Id.* § 2. The Wells are ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* The Dedicated Reserves are ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ *Id.*

16.    The parties, however, were careful to clarify that this dedication and commitment was not intended to convey any of its mineral interests to Grand Mesa. The dedication and commitment was subject to various reservations. *Id.* § 1.1. Those reservations include the following rights:



17.    Indeed, the parties clearly intended that Extraction retain its rights, titles, and interests in the Dedicated Interests because the parties contemplated situations wherein Extraction could transfer its mineral interests subject to the Transportation Agreement. *See id.* § 1.4 ("█

---

[3]        Ex. A § 2.

██████████████████████████████████████████████████

█████████████████████████); *id.* § 8.4 (warranting that Extraction possesses title to all of the crude petroleum delivered under the Transportation Agreement).

18.     The parties also included a provision that purported to contractually render the dedication—and ***only*** the dedication—a covenant running with Extraction's mineral interests in the Dedicated Area, making it enforceable against subsequent owners of Extraction's mineral interests in the Dedicated area by virtue of the privity of estate between the parties. *Id.* § 1.2.

19.     Specifically, the parties provided:[4]



20.     The Transportation Agreement is to be construed in accordance with the laws of Texas, without regards to Texas's conflict of laws rules. *Id.* § 15.14. The real property implicated by the Transportation Agreement is located within Colorado. *See id.* § 2 (defining the Dedication Area).

## Claims for Relief

21.     The allegations set forth above are incorporated herein by reference.

22.     Under Colorado law, a covenant runs with the land only when the parties intend the covenant to run with the land and the covenant touches and concerns the land. *Reishus v. Bullmasters, LLC*, 409 P.3d 435, 440 (Colo. App. 2016). Privity of estate is also required. *See*

---

[4]     Ex. A § 1.2.

*Taylor v. Melton*, 274 P.2d 977, 982 (Colo. 1954); *Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 92 P. 290, 293 (Colo. 1907).

23.    Although intent that the covenant run with the land is necessary, it is not sufficient. *See Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo. App. 1992) ("Even if there is an intent to make a covenant run with the land, the covenant must still 'touch and concern' the land, that is, it must closely relate to the land, its use, or its enjoyment.") (citing *Bigelow v. Nottingham*, 833 P.2d 764 (Colo. App. 1991)).

### COUNT I
### (Transportation Agreement – Declaratory Judgment under 28 U.S.C. § 2201(a))

24.    The allegations set forth above are incorporated herein by reference.

25.    The parties dispute whether the Transportation Agreement creates any covenants that run with the land.

26.    The Transportation Agreement does not create covenants that run with the land under Colorado law.  In particular, Extraction's purely contractual promise to deliver to Grand Mesa certain amounts of gas for shipping is not a covenant that runs with the land.

27.    First, the Transportation Agreement does not grant Grand Mesa an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law.  Indeed, the Transportation Agreement does not actually grant any interest in Extraction's allegedly burdened mineral estate.  *See* Ex. A § 2 (concerning dedication reservations); *id.* § 8.5 (concerning custody of crude petroleum).  Instead, the Transportation Agreement merely "identif[ies] and delineat[es] the [parties'] contractual rights and obligations."  *In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 76 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 Fed. Appx. 64 (2d Cir. 2018).  Thus, the original contracting parties were not in privity of estate, the current parties were

never in privity of estate, and the covenants within the Transportation Agreement do not run with the land.

28.     Second, the covenants in the Transportation Agreement do not "touch and concern" the land. Instead of benefitting or burdening Extraction's mineral estate, the Transportation Agreement benefits or burdens only the parties personally. The Transportation Agreement's covenants relate solely to Extraction's produced crude petroleum, which Grand Mesa is to transport via its interstate pipeline from Weld County, Colorado to Cushing Oklahoma.  *See generally* Ex. A.   Moreover, Extraction can satisfy its obligations under the Transportation Agreement by paying its remaining Total Financial Commitment, meaning that Grand Mesa cannot compel Extraction to do anything with its produced crude petroleum, let alone with its mineral estates.

29.     As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

30.     A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the Transportation Agreement.

31.     For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the Transportation Agreement fail to run with the land.

32.     Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[5]  It will also serve a useful purpose by enabling the Court to determine

---

[5]     On June 15, 2020, the Debtors filed the Motion to Reject to reject the Transportation Agreement pursuant to section 365 of the Bankruptcy Code and have adjourned adjudication of such to date.  Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

whether the Transportation Agreement and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

## **Prayer for Relief**

WHEREFORE, Extraction respectfully request that the Court enter judgment in Extraction's favor as follows:

(a)    Declaring that the covenants contained in the Transportation Agreement do not run with the land.

(b)    Granting Extraction such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

9

Dated:  August 19, 2020          */s/  Richard W. Riley*
Wilmington, Delaware             **WHITEFORD, TAYLOR & PRESTON LLC**[6]
                                 Marc R. Abrams (DE No. 955)
                                 Richard W. Riley (DE No. 4052)
                                 Stephen B. Gerald (DE No. 5857)
                                 The Renaissance Centre
                                 405 North King Street, Suite 500
                                 Wilmington, Delaware 19801
                                 Telephone:    (302) 353-4144
                                 Facsimile:    (302) 661-7950
                                 Email:        mabrams@wtplaw.com
                                               rriley@wtplaw.com
                                               sgerald@wtplaw.com

                                 - and -

                                 **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 Christopher Marcus, P.C. (admitted *pro hac vice*)
                                 Allyson Smith Weinhouse (admitted *pro hac vice*)
                                 Ciara Foster (admitted *pro hac vice*)
                                 601 Lexington Avenue
                                 New York, New York 10022
                                 Telephone:    (212) 446-4800
                                 Facsimile:    (212) 446-4900
                                 Email:        christopher.marcus@kirkland.com
                                               allyson.smith@kirkland.com
                                               ciara.foster@kirkland.com

                                 - and-

                                 Anna Rotman, P.C. (admitted *pro hac vice*)
                                 Kenneth Young (admitted *pro hac vice*)
                                 609 Main Street
                                 Houston, TX 77002
                                 Telephone:  (713) 836-3600
                                 Facsimile:  (713) 836-3601
                                 Email:      anna.rotman@kirkland.com
                                             kenneth.young@kirkland.com

                                 *Co-Counsel to Debtors and Debtors in Possession*

---

[6]    Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of
       Delaware.